**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

ANTHONY HEDGE,               )
                                )
          **Plaintiff,**       )
                                )
**vs.**                          )      **Case No. 06-cv-0498-MJR**
                                )
**WALT'S DRIVE-A-WAY SERVICE, INC.,)**
**DINO'S TRUCKING and PACIFIC**    )
**TRAILER REPAIR,**           )
                                )
          **Defendants.**    )

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

**A. Introduction**

       On May 26, 2006, Plaintiff Anthony Hedge filed suit in the Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois against three defendants: Pacific Trailer Repair Services, LLC ("Pacific"), Walt's Drive-A-Way Service, Inc. ("Walt's"), and Dino's Trucking ("Dino's"). On June 23, 2006 this matter was removed here on the basis of this Court's diversity jurisdiction pursuant to **28 U.S.C. § 1332** (*see* Doc. 2)**.**  Subsequently, on August 18, 2006, Plaintiff filed an amended complaint against all three defendants (*see* Doc. 19 ("Amended Complaint")).

       In his complaint, Plaintiff asserts that each defendant is responsible for "significant injuries to [his] back and neck" that he sustained when unlocked tandems on a chassis he was pulling allowed the chassis to slide into the rear of his tractor.  Specifically, in Count One, Plaintiff asserts that Walt's is responsible for injuries Plaintiff sustained on August 19, 2004 for being negligent in one or more of three ways: (a) failing to lock the tandems on the chassis in question before it was

1

delivered to Union Pacific Railroad Yard; (b) failing to inspect the chassis before it was delivered to insure that the tandems were locked; and (c) failing to warn Plaintiff that the tandems were unlocked (*see* Amended Complaint, Count One).  In Count Two, similar to Count One, Plaintiff asserts that Dino's is responsible for injuries Plaintiff sustained from a separate incident occurring on November 9, 2005 for being negligent in one or more of three ways: (a) failing to lock the tandems on the chassis in question before it was delivered to Union Pacific Railroad Yard; (b) failing to inspect the chassis before it was delivered to insure that the tandems were locked; and (c) failing to warn Plaintiff that the tandems were unlocked (*see* Amended Complaint, Count Two).  Finally, in Count Three, Plaintiff asserts that Pacific is responsible for Plaintiff's injuries resulting from both the August 19, 2004 incident as well as the November 9, 2005 incident for "negligently [failing] to properly and adequately inspect its chassis to insure its tandems were locked and it was in proper working condition" (Amended Complaint, Count Three).

Now before the Court are motions for summary judgment submitted by each defendant: Dino's (Doc. 32), Walt's (Doc. 34) and Pacific (Doc. 38).

**B. <u>Factual History</u>**

Plaintiff Anthony Hedge was employed as a hostler operator for Rail Terminal Services Inc. ("RTS") working at the Union Pacific rail yard in Dupo, Illinois.  In this capacity, Hedge was responsible for hooking trailers loaded with cargo up to his tractor (called a hostler) and then pulling the loaded trailer to the nearby railroad tracks where a modular container would be removed from the trailer and placed on a train.

At the Dupo, Illinois facility, outside trucking companies, including Walt's and

Dino's, deliver loaded trailers and chassis to the rail yard and park them in designated areas for later handling by the hostlers. Some of the 53-foot chassis used feature moveable rear tandems, which allow a truck driver to alter the distance between a trailer's front and rear axles in order to comport with varying state laws and axle load limits (*see* Deposition of Ken Pishna, Doc. 34-3, pp. 57-58). The tandems have a locking pin that can be pulled in order to move the tandem to the desired position. Once in position, the tandems can be locked in position by reinserting the pin into the designated hole.

Hedge claims that he was injured in two separate, but similar incidents. The first incident occurred on August 19, 2004, and involved a chassis/container which had been delivered to the Dupo rail yard by Walt's (*see* Amended Complaint, Count One). The second incident occurred on November 9, 2005 and involved a chassis/container combination that had been delivered to the rail yard by Dino's (*see* Amended Complaint, Count Two).

On both occasions, Hedge claims that he hooked into a chassis/container combination for the purposes of pulling it to the rail line to be unloaded onto an outbound rail car. He claims that after the container was removed from the chassis he then pulled the chassis to another location within the rail yard to drop it off. Hedge alleges that, on both occasions, the rear tandem had been left unlocked and when he applied his brakes, the rear tandem was allowed to slide forward with force, causing him to sustain whiplash-type injuries (*see* Deposition of Anthony Hedge, Doc. 34-2, pp. 28-30).

Defendant Pacific is under contract with Union Pacific Railroad to supply gate inspection services at the Dupo, Illinois facility. Gate inspectors are charged with the responsibility

3

of checking all incoming trucks to make sure that the cargo is destined for an outbound Union Pacific train. The gate inspectors also perform a brief walk-around inspection of the chassis and container to insure and/or document any damage or problems with the container or the chassis. During this inspection, gate inspectors will also note if the tandems are locked. If tandems are unlocked, the drivers are instructed to make sure that the tandems are locked before they can proceed into the rail yard.  Once a truck is checked into the rail yard, Pacific personnel have no further contact with or control over the chassis or containers (*see* Deposition of Charles Reynolds, Doc. 34-4, pp. 9-10).

Notably, however, Pacific yard personnel testified that sometimes outside truck drivers will pick up the wrong container, move that container toward the gate, either realize it's the wrong one before reaching the gate, or be told at the gate that it's the wrong container, and then return and re-park the container. Outside drivers picking up loads at the Dupo yard will sometimes unlock and move tandems to balance out their loads before leaving so as to be able to drive on public roadways. According to testimony of yard personnel, this activity happens often enough that it presents one reason that the supervisors have to physically check the location of loaded containers, on average, twice daily (*see* Deposition of Charles Reynolds, Doc. 34-4, pp. 18-20; Deposition of Randal Joe Lee, Doc. 34-6, p. 19; Deposition of Charles Yeargain, Doc. 34-7, pp. 12, 17; Deposition of Laurie Hermes-Greco, Doc. 34-8, pp. 18, 60, 118-119; Deposition of Michelle Meyers, Doc. 34-9, pp. 1-2).  Laurie Hermes-Greco, Plaintiff's supervisor, testified that as few as ten and perhaps as many as twenty outside drivers visit the Dupo yard overnight from 10:00 p.m. to 6:00 a.m., and that "200 to 300" drivers may visit during the day (Deposition of Laurie Hermes-Greco, Doc. 34-8, pp.

103-104).

At all relevant times, Rail Terminal Services ("RTS"), Plaintiff's employer, had supervisors whose job it was to go out every morning and early afternoon to check the location of each container in the Dupo yard. If the container's location as shown in the supervisor's computer was correct, the supervisors need not make any computer input. However, if the location of the container was different from what the supervisor's computer showed, the supervisor would make inputs into the computer to correct the information to show the correct spot of the container. The supervisor could either make this entry called a "yard check", or he/she could make that entry as a "move."

Supervisors would check a certain area of the yard, the A, B, C, and D pads, at least twice a day because that is where loaded containers to be shipped were located, and it was important to make sure that the locations of the containers as shown in the RTS computer system were accurate (Deposition of Anthony Hedge, Doc. 34-4, pp. 26-27; Deposition of Randal Joe Lee, Doc. 34-6, pp. 14-20; Deposition of Charles Yeargain, Doc. 34-7, pp. 10-17; Deposition of Laurie Hermes-Greco, Doc. 34-8, pp. 9-12).

All entries made by RTS supervisors or any other employee related to a container or chassis would be entered into the RTS computer system and result in a "Unit Display Screen" or "Oasis Report" that show the complete activity related to that particular container. The Unit display can identify physical moves of a container if there was an entry made by an RTS employee (Deposition of Anthony Hedge, Doc. 34-4, pp. 22-24; Deposition of Randal Joe Lee, Doc. 34-6, pp. 42, 45; Deposition of Charles Yeargain, Doc. 34-7, pp. 13-15; Deposition of Laurie Hermes-Greco,

5

Doc. 34-8, pp. 53-54).

*The August 19, 2004 Incident*

The August 19, 2004 incident involves a chassis which was delivered to the facility by Ken Pishna, an employee of Walt's Drive-A-Way Service. The gate inspector who checked in this particular truck was Pacific employee Tom O'Malley.  O'Malley has no independent recollection of checking in that particular chassis/container combination; however, he testified that his policy and practice would have been to check the tandems to make sure that they were locked at the time that the driver was allowed entry into the rail yard (Deposition of Tom O'Malley, Doc. 34-10, pp. 5-6, 11-12).

Ken Pishna testified that he does have a specific recollection of the evening in question and recalls that the tandems were locked when he arrived at the inspection gate the night of August 18, 2004, but that he was required to move the rear tandems to their rearward position before being allowed into the rail yard.  He testified that he got out of his truck and unlocked the tandem and then got back in the truck and moved his tractor forward moving the rear-wheeled tandem back. Pishna testified that he felt the tandem lock release and catch, and asked the gate inspector if the tandem was locked. According to Pishna, the gate inspector, O'Malley, who was standing right next to the location where the tandem locking pin was located, waved Pishna to go forward into the yard to park his unit (Deposition of Ken Pishna, Doc. 34-3, pp. 35-36, 39-40, 49-51, 53, 55-56).

Notably, an RTS "Oasis Report" submitted by Walt's indicates that the relevant chassis/container combination was parked in one location in the yard, "North B pad" on the evening

6

of August 18, 2004 when Pishna left the Dupo yard, but was located in a different location, "North C pad," when the RTS Supervisor Laurie Hermes conducted her yard check the morning of August 19, 2004 (*see* Doc. 34-11, RTS "Oasis Report"). Records further show that the relevant chassis was on the Dupo facility for approximately 13.5 hours between the time the truck was checked in by Tom O'Malley and when Plaintiff claims to have been injured (*see* Doc. 34-11).

*The November 9, 2005 Incident*

The November 9, 2005 incident involved a container/chassis combination that was delivered by Nahid Smajic, an employee of Dino's Trucking. The gate inspector on that occasion was Michelle Meyers. Meyers testified that she has no independent recollection of checking this particular chassis/container combination into the rail yard, but also testified that her policy and practice would be to check the tandems to make sure that they are locked before allowing a chassis/container combination into the rail yard (*see* Deposition of Michelle Meyers, Doc. 32-2, p. 5 and Doc. 34-9, pp. 15-16).

The driver for Dino's Trucking, Nahid Smajic, has testified that although he does not remember this particular incident, he would have extended his tandem to its full rearward position at the gate area and that he would have done this by himself and would not have relied upon the gate inspector to unlock or lock the tandems. He has also testified that he would not have proceeded into the rail yard without the tandems being properly locked (*see* Deposition of Nahid Smajic, Doc. 32-2, pp. 16, 21-22).

The records available regarding this particular chassis do not indicate one way or another whether anyone moved, or otherwise touched or tampered with the chassis delivered by

Smajic. Those records do indicate, however, that the chassis was at the Dupo facility for approximately 20 hours between the time that the truck was checked in by Michelle Meyers and when Plaintiff claims to have been injured (*see* Doc. 38-5).

Hedge testified that he knew prior to November 9, 2005, that he could sustain injury if the tandems on the chassis were unlocked, as he claims that he was injured in an identical manner in August 2004, as noted above (Doc. 32-2, "Exhibit A" pp. 60-62, "Exhibit E" pp. 114-115).

In addition, Hedge admitted that he can see whether the rear tandems are unlocked while standing at the door of his tractor, by looking down the side of the chassis (Doc. 32-2, "Exhibit A" pp. 41-43; "Exhibit F" pp. 70-76). Moreover, terminal manager Randal Joe Lee told Hedge prior to November 9, 2005, to verify the locked conditions of the tandems before moving any chassis (Doc. 32-2, "Exhibit A," pp. 70-71).

## C. Applicable Legal Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. **FEDERAL RULE OF CIVIL PROCEDURE 56(c).** The moving party bears the burden of establishing both the absence of fact issues and entitlement to judgment as a matter of law. ***Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).**

In determining whether a genuine issue of material fact exists, the Court reviews the record in the light most favorable to the non-moving party and makes all reasonable inferences in the non-movant's favor. ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Ulichny v. Merton Community School Dist.*, 249 F.3d 686, 699 (7th Cir. 2001); *Miranda v. Wisconsin Power***

8

*& Light Company*, 91 F.3d 1011, 1014 (7th Cir. 1996).

To succeed on a negligence claim, a plaintiff must prove that the defendant owed a duty to the plaintiff, breached that duty, and the breach was the proximate cause of the plaintiff's injuries. ***Thompson v. County of Cook,*** **609 N.E.2d 290, 293 (Ill. 1993) (citing *Wojdyla v. City of Park Ridge,* 592 N.E.2d 1098, 1100 (Ill. 1992))**. The existence of a duty must be determined as a matter of law, whereas the breach and proximate cause determinations are questions of fact. ***First Nat'l Bank v. City of Aurora,*** **373 N.E.2d 1326, 1331 (Ill. 1978)**. If, however, reasonable persons could only come to one conclusion based on the evidence, then the question of proximate cause may be decided as a matter of law. ***Sokolowski v. All Points Distribution Serv., Inc.,*** **612 N.E.2d 79, 82 (Ill. 1993)**. In addition, there is no proximate cause if a third person's independent acts break the causal connection between the alleged negligence and the injury. ***Thompson,*** **609 N.E.2d at 294.** Instead, the independent act is the proximate cause of the injury. ***Id.***

Plaintiff, as the non-movant, is not required to prove his case at the summary judgment stage, but has the burden of presenting some factual basis that would arguably entitle him to a judgment. ***Geraghty v. Continental Western Life Ins. Co.,*** **667 N.E.2d 510, 516 (Ill. App. 3d. 1996).** A plaintiff may demonstrate proximate cause through both circumstantial and direct evidence. ***McInturff v. Chicago Title & Trust Co., Inc.,*** **243 N.E.2d 657, 663 (Ill. App. 2d. 1968)**. But proximate cause may not be based on "mere surmise, guess, or conjecture as to the cause of the injury." ***Bermudez v. Martinez Trucking Co.,*** **796 N.E.2d 1074, 1078 (Ill. App. 3d. 2003)**. Instead, there must be evidence that could show a reasonable certainty that defendant's acts or omissions

caused plaintiffs' injury. ***Salinas v. Werton,* 515 N.E.2d 142, 144 (Ill. App. 3d. 1987).** The question of whether a defendant breached its duty to a plaintiff is normally a factual one, and should only be resolved by a court as a legal matter when the evidence presents no genuine issue of material fact regarding that subject. ***Nowak v. Coghill,* 695 N.E.2d 532, 537 (Ill. App. 3d. 1998).**

**D. <u>Analysis</u>**

Before the Court are motions for summary judgment presented by each of the three defendants in this matter: Dino's (Doc. 32), Walt's (Doc. 34) and Pacific (Doc. 38).  The Court will review each motion in turn.

*Dino's Motion for Summary Judgment*

In its motion for summary judgment (Doc. 32) and memorandum in support (Doc. 33), Dino's points out that Plaintiff has not presented any direct evidence establishing that the driver for Dino's, Nahid Smajic, left the rear tandems unlocked when he delivered the accident chassis to the Dupo Railyard on November 8, 2005.  Dino's argues that Plaintiff's conclusion that Dino's is responsible is based merely on "surmise, guess, or conjecture," and is therefore insufficient as a matter of law.  This Court disagrees.

A plaintiff may demonstrate proximate cause through circumstantial evidence. ***McInturff,* 243 N.E.2d at 663.**  In fact, "circumstantial evidence is often more satisfactory than direct evidence." ***McCullough v. Gallaher & Speck,* 627 N.E. 2d 202, 208 (Ill. App. 3d. 1993).** In this matter, Plaintiff has presented a significant amount of evidence that could support a finding of negligence on the part of Dino's.  For instance, Nahid Smajic is the last person known to have been

in control of the chassis in question before its coming under the control of Plaintiff. Although the chassis was in the Dupo yard for approximately 20 hours, the records available regarding this particular chassis do not indicate that anyone moved, or otherwise touched or tampered with the chassis delivered by Smajic.

In addition, Plaintiff has presented evidence that outside drivers leaving the tandems unlocked on trailers delivered to the Dupo yard has been an ongoing and chronic problem for years and persists to this day (Deposition of Michelle Meyers, Doc. 43-4, pp. 21-22; Deposition of Charles Reynolds, Doc. 43-5, pp. 15-16; Deposition of Charles Yeargain, 43-8, pp. 38, 43). Further, Plaintiff presented evidence that some outside drivers slide their tandems back after they pass through the inspection gate and once they are physically inside the rail yard (Deposition of Randal Lee, Doc. 43-2, p. 99). Although Smajic testified that he does not slide the tandems back after entering the yard, he also testified that he does not even remember this particular delivery.

In deciding a motion for summary judgment, the Court reviews the record in the light most favorable to the non-moving party and makes all reasonable inferences in the non-movant's favor. ***Anderson,* 477 U.S. at 255.** Viewing the above-referenced evidence (as well as several other facts within the record of this matter) in a light most favorable to Plaintiff, the Court finds that Plaintiff has presented evidence sufficient to support a jury's finding of negligence on the part of Dino's. Dino's driver Smajic having failed to secure the tandems on the chassis in question is a "reasonable inference" that can be drawn from the facts presented, and which this court must construe in Plaintiff's favor.

Nonetheless, as this Court has noted, there is no proximate cause if a third person's

11

independent acts break the causal connection between the alleged negligence and the injury. ***Thompson,*** **609 N.E.2d at 294.**  Dino's attempts to present this theory by arguing that "several groups of people ... have access to the loaded chassis and can and do move them with some frequency" (Doc. 33, p. 6).  However, although Dino's has presented some testimony supporting this contention, Dino's showing is not nearly so strong that it makes that theory a jury's only reasonable conclusion in this matter.

First, the Court notes that Dino's provides no direct evidence supporting its contention, but rather simply witness testimony.  This being the case, the strength of Dino's position hinges largely on the perceived credibility of its witnesses – a question that is much better left to a jury to decide.  Moreover, in that Plaintiff has presented testimony refuting Dino's contention that the chassis in question was moved or tampered with during the relevant time period, material issues of fact bearing upon this issue remain in dispute (*see* Deposition of Randal Joe Lee, Doc. 43-3, p. 82; Deposition of Laurie Hermes-Greco, Doc. 43-2, pp. 102).

As mentioned, if reasonable persons could only come to one conclusion based on the evidence, then the question of proximate cause may be decided as a matter of law. ***Sokolowski*, 612 N.E.2d at 82 (Ill. 1993).**  Otherwise, the determination is a questions of fact that must be submitted to a jury. ***First Nat'l Bank,*** **373 N.E.2d at 1331 (Ill. 1978)**.  In this matter, viewing the evidence in the light most favorable to Plaintiff, the non-liability of Dino's is *not* the only conclusion a finder of fact could draw from the record of this matter.

For the above-stated reasons, the Court concludes that material issues of fact exist in

this matter and Dino's is not entitled to judgment as a matter of law.  Accordingly, pursuant to

**FEDERAL RULE OF CIVIL PROCEDURE 56(c)**, the Court **DENIES** Dino's motion for summary

judgment (Doc. 32).

*Walt's Motion for Summary Judgment*

In its motion for summary judgment (Doc. 34) and memorandum in support (Doc.

35), Walt's makes an almost identical argument as does Dino's: Walt's also points out that Plaintiff

has not presented any direct evidence establishing that the driver for Walt's, Ken Pishna, left the rear

tandems unlocked when he delivered the accident chassis to the Dupo Railyard on August 19, 2004.

Walt's argues that Plaintiff's conclusion that Walt's is responsible is based merely on "surmise,

guess, or conjecture," and is therefore insufficient as a matter of law.  In addition, Walt's argues that

it is equally or more probable that some third party unlocked the tandems while the relevant chassis

was in the Dupo yard.

As Walt's arguments and relied-upon evidence are similar to those presented by

Dino's, the Court's analysis is also similar.  As mentioned, a plaintiff may demonstrate proximate

cause through circumstantial evidence, ***McInturff,* 243 N.E.2d at 663,** and "circumstantial evidence

is often more satisfactory than direct evidence." ***McCullough v. Gallaher & Speck,* 627 N.E. 2d**

**202, 208 (Ill. App. 3d. 1993).**  In this matter, Plaintiff has presented a sufficient amount of evidence

to support a finding of negligence on the part of Walt's.  For instance, Ken Pishna is the last

identifiable person known to have been in control of the chassis in question before its coming under

the control of Plaintiff.  Granted, the evidence does show that the relevant chassis/container

combination was parked in one location in the yard, "North B pad," on the evening of August 18,

2004 when Pishna left the Dupo yard, but was located in a different location, "North C pad," when the RTS Supervisor Laurie Hermes conducted her yard check the morning of August 19, 2004 (*see* Doc. 34-11).  Nevertheless, the record of this matter remains inconclusive as to exactly who might have moved the chassis.  Further, in light of other facts within the record of this matter, the RTS report does not prove one way or another that any third party moved, adjusted or unlocked the *tandems* on the chassis.

Moreover, Walt's admits that the records indicating that the chassis was parked on "North B" pad are likely the result of Pishna telling the gate supervisor, Tom O'Malley, that he parked the chassis in that location instead of his originally-assigned location.  According to Plaintiff's supervisor and the manager of terminal operations, however, outside drivers misreport where they parked a trailer "quite frequently" (Deposition of Randal Joe Lee, Doc. 44-3, p. 46; Deposition of Laurie Hermes-Greco, Doc. 44-2, pp. 58-59).  In additioon, Pishna does not specifically remember informing Tom O'Malley of the "move."  At best, this somewhat inconsistent testimony creates the need for a credibility determination, something much better left to a finder of fact.  Moreover, Plaintiff's attack on the accuracy of the report creates a disputed issue of material fact bearing on the issue of Walt's liability.

In further support of its contention that Walt's is liable, Plaintiff has presented evidence that outside drivers leaving the tandems unlocked on trailers delivered to the Dupo yard has been an ongoing and chronic problem for years and persists to this day (Deposition of Michelle Meyers, Doc. 43-4, pp. 21-22; Deposition of Charles Reynolds, Doc. 43-5, pp. 15-16; Deposition of Charles Yeargain, 43-8, pp. 38, 43).  Further, Plaintiff presented evidence that some outside drivers slide their tandems back after they pass through the inspection gate and once they are

14

physically inside the rail yard (Deposition of Randal Lee, Doc. 43-2, p. 99).

As mentioned, in deciding a motion for summary judgment, the Court reviews the record in the light most favorable to the non-moving party and makes all reasonable inferences in the non-movant's favor. *Anderson,* **477 U.S. at 255.** Viewing the above-referenced evidence (as well as several other facts within the record of this matter) in a light most favorable to Plaintiff, the Court finds that Plaintiff has presented evidence sufficient to support a jury's finding of negligence on the part of Walt's. Walt's driver Pishna having failed to secure the tandems on the chassis in question is a "reasonable inference" that can be drawn from the facts presented, and which this court must construe in Plaintiff's favor.

However, as this Court has noted, there is no proximate cause if a third person's independent acts break the causal connection between the alleged negligence and the injury. *Thompson,* **609 N.E.2d at 294.** Walt's attempts to present this theory by arguing that "several groups of people ... have access to the loaded chassis and can and do move them with some frequency" (Doc. 33, p. 6). As was the case with Dino's, however, Walt's showing is not nearly so strong that it makes such contention a jury's only reasonable conclusion in this matter.

First, the Court notes that Walt's provides no direct evidence supporting its contention that a third party unlocked the tandems, but rather simply witness testimony and an computer report – the accuracy of which is contested – indicating only that the *chassis* may have been moved by a third-party. As with Dino's, the strength of Walt's position hinges largely on the perceived credibility of its witnesses – a question that is much better left to a jury to decide. Moreover, as mentioned, Plaintiff's attack on the accuracy of the computer tracking system report

15

creates a disputed issue of material fact bearing on this issue.

If reasonable persons could only come to one conclusion based on the evidence, then the question of proximate cause may be decided as a matter of law. ***Sokolowski*, 612 N.E.2d at 82 (Ill. 1993)**. Otherwise, the determination is a questions of fact that must be submitted to a jury. ***First Nat'l Bank,* 373 N.E.2d at 1331 (Ill. 1978)**. In this matter, viewing the evidence in the light most favorable to Plaintiff, the non-liability of Walt's is *not* the only conclusion a reasonable finder of fact could draw from the record of this matter.

For the above-stated reasons, the Court concludes that material issues of fact exist in this matter and Walt's is not entitled to judgment as a matter of law. Accordingly, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**, the Court **DENIES** Walt's motion for summary judgment (Doc. 34).

*Pacific's Motion for Summary Judgment*

In its motion for summary judgment (Doc. 38) and memorandum in support (Doc. 39), Pacific argues that Plaintiff has not presented any direct evidence establishing that the tandems on the chassis involved in either incident were unlocked as they came through the gate into the Dupo Yard and that Plaintiff's contention that Pacific was negligent is based merely on "surmise, guess, or conjecture," and is therefore insufficient as a matter of law. This Court disagrees with these assertions.

A plaintiff may demonstrate proximate cause through circumstantial evidence. ***McInturff,* 243 N.E.2d at 663,** and "circumstantial evidence is often more satisfactory than direct evidence." ***McCullough v. Gallaher & Speck,* 627 N.E. 2d 202, 208 (Ill. App. 3d. 1993).** In this

16

matter, Plaintiff has presented enough evidence to support a finding of negligence on the part of Pacific. It is undisputed that the tandems on both relevant chassis were unlocked at the time of Plaintiff's injury. From the outset, one possible explanation for this fact was that each driver arrived at the gate with the tandems unlocked and the gate inspector failed to correct the problem. At this juncture, viewing the developed record in the light most favorable to Plaintiff, this explanation is not only "possible," but is one of the "probable" explanations for the tandems being unlocked.

Plaintiff has presented evidence that outside drivers leaving the tandems unlocked on trailers delivered to the Dupo yard has been an ongoing and chronic problem for years and persists to this day (Deposition of Michelle Meyers, Doc. 43-4, pp. 21-22; Deposition of Charles Reynolds, Doc. 43-5, pp. 15-16; Deposition of Charles Yeargain, 43-8, pp. 38, 43). Moreover, in spite of the fact that both Tom O'Malley and Michelle Meyers testified that they *would* have, or *usually* ensure that tandems are locked before entering the yard, neither Meyers nor O'Malley specifically remember checking the trailers in question. Not only does each witnesses' inability to remember the specific chassis in question raise doubts about the accuracy of their testimony, but also that inability significantly lessens the probative value of their testimony. Either way, Plaintiff has called into question the veracity of these witnesses' testimony, creating disputed issues of material fact that may only properly be resolved by a jury.

In addition, like its co-defendants, Pacific's argument for summary judgment relies on its contention that it is not uncommon for a loaded chassis to be moved between the time an outside driver delivers it and a hostler loads it on an ongoing train. This Court has discussed this contention at length, *supra,* and determined that the evidence presented by all three defendants, even in combination, still falls far short of making an unknown, third-party's liability a jury's *only*

17

reasonable conclusion in this matter.

As mentioned, if reasonable persons could only come to one conclusion based on the evidence, then the question of proximate cause may be decided as a matter of law. ***Sokolowski*, 612 N.E.2d at 82 (Ill. 1993).** Otherwise, the determination is a questions of fact that must be submitted to a jury. ***First Nat'l Bank,* 373 N.E.2d at 1331 (Ill. 1978)**. The evidence in this matter, viewed in the light most favorable to Plaintiff can support a juror's reasonable conclusion that Pacific employees Meyers and/or O'Malley failed to properly ensure the tandems were locked on the chassis in question. In addition, disputed issue of material fact exist as to the evidence presented in support of Pacific's theories of non-liability.

For these reasons, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**, the Court **DENIES** Pacific's motion for summary judgment (Doc. 38).

## E. Conclusion

For the foregoing reasons, the Court **DENIES** all three motions for summary judgment by each of the three defendants: Dino's Trucking (Doc. 32), Walt's Drive-A-Way Service, Inc (Doc. 34), and Pacific Trailer Repair (Doc. 38).

**IT IS SO ORDERED.**

**DATED this 2nd day of August, 2007.**

                                                  s/ Michael J. Reagan

                                          **MICHAEL J. REAGAN**
                                          **United States District Judge**

18